## Lexington Herald Co. v. Westerman.
(Decided Nov. 1, 1935.)

OWEN S. LEE for appellant.

GEORGE W. VAUGHN for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

On September 30, 1931, the appellant and defendant below, Lexington Herald Company, by written contract employed the appellee and plaintiff below, C. E. Westerman, who was then about eighteen or nineteen years

of age, to deliver its morning paper in Lexington, Ky., over route 301 in that city, and upon which there were a few less than 100 subscribers whom Westerman served. In that contract he agreed to serve the route for as much as two years, and there were other conditions and stipulations guaranteeing efficiency and prompt service on his part. He was to receive therefor 8 cents per week for each subscriber for defendant's paper, which made his remuneration in the neighborhood of $8 per week. Among other things plaintiff agreed to therein was, that if he discontinued the service for more than two weeks and had it performed by a substitute, he would give defendant two weeks' notice in writing, and that in providing a substitute for temporary absence he would select one capable and efficient for the purpose. There was nothing in the contract of employment by which plaintiff could, in any contingency, obtain any proprietary interest in the route more than to serve in such capacity for the two-year period without breaching it on his part. However, on Christmas Day, 1931, following the execution of the contract, F. L. Crawford, circulating manager of defendant, addressed plaintiff a letter stating that defendant would make him the owner of the route, after January 1, 1932, and further stating to him that in that event he would have the right to sell the route to a qualified person at a price not exceeding $1 for each subscriber thereon.

At the beginning of the school vacation thereafter plaintiff left Lexington to spend it with his parents at their home in Anchorage, Ky. Before doing so he procured one A. E. Anna as a substitute deliverer of defendant's papers on his route. The substitute does not seem to have given satisfaction to defendant, but while serving as such he reported to it some facts indicating plaintiff's nonobservance of the contract while he was delivering the paper, and it addressed a letter concerning such matters to plaintiff at Anchorage. Plaintiff claims to have answered that letter, but no copy of it nor the original was introduced at the trial, though he testified that he informed defendant therein that he was not responsible for the matter complained of, and, furthermore told it that "if anything like that occurred to be sure to let me know about it."

Anna, for some cause, not shown by the record,

ceased to further deliver defendant's papers on the route, and plaintiff averred in his pleadings that it then sold the route to another. He did not return to Lexington until near the beginning of the school year commencing in the fall of 1932, when he demanded what he termed "his route," but which defendant refused. On April 1, 1933, he filed this action in the Fayette circuit court by his father as his next friend, against defendant to recover $500 damages for its alleged breach of plaintiff's contract; but nowhere in his petition, nor in any other pleading filed by him later on, nor in his proof, did he point out any items of damage growing out of such alleged breach, contenting himself only with saying in his pleading: "Plaintiff further states that by selling said route the defendant damaged the plaintiff in the sum of $500.00," for which amount he prayed judgment. The petition was later amended, and in which it was stated that prior to December 25, 1931, plaintiff "did certain work for defendant, the Lexington Herald, and as a result of said work he was awarded by the defendant the ownership of the route mentioned in plaintiff's petition."

Various motions and interlocutory steps were made and taken by both sides, and finally defendant commenced answering the petition and its amendments which ultimately ended up in a combined pleading styled an "amended answer, counterclaim and rejoinder," which was traversed of record, and a trial was entered into on the 16th day of May, 1934, more than one year after the action was filed and on many false issues. It resulted in a verdict in favor of plaintiff for $250. The answer and its amendments, besides denying defendant's violations of the contract, affirmatively pleaded plaintiff's violations thereof, which were controverted by him; but at the trial neither he nor any witness introduced by him testified to any damage sustained or suffered by him, nor to any fact having a remote bearing on the established rules for the proper measurement of damages upon the violation of such a contract, and which condition of the testimony at best entitled plaintiff only to nominal damages.

The court, however, on its own motion, peremptorily instructed the jury to find for the plaintiff "in such sum as it [the jury] may believe from the evidence will fairly and reasonably compensate plaintiff for the

loss of the newspaper route mentioned in the evidence, your verdict in no event to exceed $500.00.'' Neither side introduced any evidence to sustain their respective contentions as made by their pleadings, except plaintiff proved the fact that he lost his route in the manner hereinbefore stated; but he denied any dereliction on his part contributing to that loss. He did not plead any consideration for his becoming the owner of the route, but he did testify that he was told by defendant's manager that if he increased his list of subscribers on his route to as many as ten that the route would become his. Crawford, the manager of defendant, was not introduced, nor did any witness testify for it who knew any relevant fact in the case; while plaintiff, as we have seen (conceding that he became the owner of the route as contended by him) testified to no facts entitling him to substantial damages, if it had been shown that the route was wrongfully taken from him by defendant. But if he had testified to facts entitling him to compensation for the violation of his contract, then the instruction of the court should have confined the issue to such testimony. Instead of doing so, it gave the jury no criterion whatever by which to measure plaintiff's compensatory damages, even if his testimony had been such as to authorize their recovery, and for that error alone the judgment will have to be reversed.

A careful reading of the record, and especially the exhibits relied on as creating plaintiff's possessory rights for the violations of which he claims damages, convinces us that at best plaintiff had a contract with defendant to deliver its papers on the route in question for a period of two years, provided he efficiently did so, and that he was responsible for the acts of any substitute that he might put in his place when personally absent. It is also manifest that the only damage that plaintiff would be entitled to recover as a result of being wrongfully deprived of his contract would be (a) not exceeding $1 per subscriber on his route if he had a bona fide offer therefor and was contemplating selling it to a purchaser who was capable of carrying out its terms and defendant by some wrongful act on its part prevented him from doing so; and (b) that if he did not contemplate selling his route, and while his contract was yet in force and effect, defendant wrongfully breached it, and by which he was deprived of it, in which event he would be entitled to recover against de-

134

fendant the reasonable net profits that he might make in fulfilling it for the unexpired period of two years it was to run, less what he might earn at other engagements that he was capable of filling, and which he obtained or might have obtained by reasonable efforts. No such issues, as we have seen, were presented by plaintiff, either in pleading or by any evidence introduced or offered, and which, we repeat, entitled him to recover only nominal damages at best. It, therefore, is apparent that the pleadings in this case should receive some needed renovation and repair by way of amendment or substitution so as to present in proper form the questions necessary to be determined in adjusting the rights of the parties.

Wherefore, the motion for an appeal is sustained, and the appeal is granted, and the judgment is reversed, with directions to set it aside, and for proceedings consistent with this opinion.